IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Edward B. Bennett, ) | Case No. 8:10-cv-1623-HFF-JDA |
| ) | |
| Plaintiff, ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| v. ) | |
| ) | |
| Sheriff Al J. Cannon, Jr.; Chaplain Eva ) | |
| Smith; the State of South Carolina and Its ) | |
| Agents; and Charleston County Detention ) | |
| Center and Staff, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This matter is before the Court on Defendants'[1] motion for summary judgment. Plaintiff, a prisoner proceeding pro se, brought this civil rights action under 42 U.S.C. § 1983. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

Plaintiff filed this action on June 24, 2010 [Doc. 1], alleging violations of his First, Eighth, and Fourteenth Amendment rights [Doc. 1-4]. On February 3, 2011, Defendants filed a motion for summary judgment. [Doc. 44.] On April 15, 2011, Plaintiff filed a response in opposition to Defendants' motion.[2] [Doc. 61.]

---

[1] Defendants the State of South Carolina and Its Agents and Charleston County Detention Center and Staff were terminated as parties on November 16, 2010. [Doc. 30.] Therefore, any reference to "Defendants" in this Report and Recommendation is to Defendants Sheriff Al J. Cannon, Jr., and Chaplain Eva Smith.

[2] On April 7, 2011, Plaintiff filed a motion to strike Defendants' motion for summary judgment because Defendants sent their motion for summary judgment to an incorrect address, although Defendants had sent other correspondence to the correct address, and Defendants' counsel placed an incorrect date on correspondence with Plaintiff. [Docs. 58, 58-1.] Defendants filed a response to Plaintiff's motion to strike;

## BACKGROUND

Plaintiff alleges he is a Muslim and requested the Charleston County Detention Center ("CCDC") to provide him with meals that conformed to his religious beliefs—meals without pork. [Doc. 1-4 at 3.] Plaintiff alleges he was not provided with such meals, was denied a prayer rug, and was denied a Qur'an. [*Id.*] Plaintiff also alleges Defendant Sheriff Al J. Cannon, Jr. ("Cannon"), failed to intervene or respond to Plaintiff's requests and grievances. [*Id.* at 4.] As relief, Plaintiff seeks damages in the amount of $160,000 per defendant, punitive damages in the amount of $1 million per defendant, that all Muslims and Jews receive equal treatment and meals required by law, and that CCDC serve meals like the federal Bureau of Prisons serves—"two portions to equal the amount of nutrition as the caloric intake of others." [*Id.* at 5.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal. *Id.* at

---

Defendants' counsel acknowledged she had mistakenly mailed the motion for summary judgment to an incorrect address but had mailed the motion to the correct address as soon as she realized the mistake, and the Court granted Plaintiff thirty additional days to respond to the motion. [Doc. 59; *see* Doc. 53.] On April 29, 2011, Plaintiff filed a reply, urging the Court to grant the motion to strike because Defendants' counsel had made false statements. [Doc. 63.] On May 13, 2011, the Court denied Plaintiff's motion to strike Defendants' motion for summary judgment. [Doc. 65.]

520–21.  The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so.  *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).  A court may not construct the plaintiff's legal arguments for him.  *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993).  Nor should a court "conjure up questions never squarely presented."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

Section 1983 provides a private cause of action for plaintiffs alleging constitutional violations by persons acting under color of state law.  Section 1983 provides, in relevant part,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [him] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [him] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage."  *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by

> governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* at 310 (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  *Id.* at 324.  Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue.  *Id.*  Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion.  *Anderson,* 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion.  *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual

disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

**Claims for Injunctive and/or Declaratory Relief are Moot**

First, because Plaintiff is no longer incarcerated at CCDC [*see* Doc. 69 (Plaintiff's latest notice of change of address, updating Plaintiff's address to the Chatham County Jail in Savannah, Georgia)], his claims are moot to the extent he is seeking injunctive and/or declaratory relief. *Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 248–49 (4th Cir. 2005) (holding that former detainee's request for injunctive relief was moot). Plaintiff's claims for monetary damages, however, survive his release from CCDC, *id.*, and, as public officials, Defendants are subject to suit for damages in their individual capacities in a §

1983 lawsuit,[3] *Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Goodmon v. Rockefeller*, 947 F.2d 1186, 1187 (4th Cir. 1991).  Nevertheless, for the reasons set forth below as to Plaintiff's damages claims, the evidence is insufficient to create a genuine issue of fact as to whether Defendants violated Plaintiff's constitutional rights.

**Religious Claims**

Plaintiff alleges Defendants have violated his First, Eighth, and Fourteenth Amendment rights by denying Plaintiff a prayer rug, a Qur'an, and meals that conform with his religious beliefs.[4]

Because Defendants contend Plaintiff's request for religious meals was denied based on CCDC policy, the Court analyzes Plaintiff's claim regarding the denial of religious meals as a challenge to the applicable policy.  However, Plaintiff's claims regarding the denial of a Qur'an and a prayer rug do not present challenges to CCDC's regulations regarding religious materials.  CCDC's policy allows prisoners to possess paperback copies of the Qur'an [Doc. 44-4 at 12] and prayer rugs in their room/cell [*id.* at 9].  Plaintiff does not allege that Defendants would not allow Plaintiff to possess a non-paperback Qur'an;

---

[3] Defendant Chaplain Eva Smith ("Smith") is an employee of CCDC.  [Doc. 44-5 ¶ 2.]

[4] To the extent Plaintiff alleges a claim based on a violation of the Eighth Amendment, the Court finds Plaintiff has failed to demonstrate that Defendants' actions constituted cruel and unusual punishment.  Under the Eighth Amendment, a prison official cannot be liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  To satisfy the objective component of the test articulated in *Farmer* and show that a deprivation is extreme enough to constitute an Eighth Amendment claim, "a prisoner must 'produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions,' or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (quoting *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993)).  Here, Plaintiff has failed to produce evidence of a significant physical or emotional injury resulting from Defendants' actions; therefore, Plaintiff has failed to establish a violation of his Eighth Amendment rights.

7

Plaintiff merely alleges Smith denied Plaintiff a Qur'an.  [Doc. 1-4 at 3.]  Further, Plaintiff does not challenge the CCDC policy with respect to prayer rugs; he alleges only that Smith denied him a prayer rug.  [*Id.*]  Accordingly, the Court does not address the reasonableness of the CCDC policies with respect to paperback religious books and the possession of prayer rugs, although the Court notes the Supreme Court has upheld prison regulations restricting the possession of hardback books.  *Bell v. Wolfish*, 441 U.S. 520, 550 (1979) ("We conclude that a prohibition against receipt of hardback books unless mailed directly from publishers, book clubs, or bookstores does not violate the First Amendment rights of [ ] inmates.  That limited restriction is a rational response by prison officials to an obvious security problem.").

### *First Amendment Claims*

While prisoners do not forfeit all constitutional rights upon their imprisonment, *Bell v. Wolfish*, 441 U.S. 520, 545 (1979), incarceration necessarily limits a prisoners' privileges and rights, "both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (quoting *Price v. Johnston*, 334 U.S. 266, 285 (1948); citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *Procunier v. Martinez*, 416 U.S. 396, 412 (1974)).  The Supreme Court has repeatedly upheld prison regulations restricting prisoners' First Amendment rights.  *See, e.g.*, *Beard v. Banks*, 548 U.S. 521 (2006); *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *O'Lone*, 482 U.S. 342; *Turner v. Safley*, 482 U.S. 78 (1987); *Bell*, 441 U.S. 520.  Accordingly, prisoners have a right to practice religion, but that right may be restricted.  *Sindram v. Saxton*, 955

F.2d 42, 1992 WL 29297, at *2 (4th Cir. 1992) (unpublished table decision) (citing *O'Lone*, 482 U.S. 342; *Sweet v. S.C. Dep't of Corrs.*, 529 F.2d 854 (4th Cir. 1975)); *see also Cruz v. Beto*, 405 U.S. 319, 322 (1972) (reversing dismissal of state prisoner's complaint, alleging violations of religious freedom under First Amendment and equal protection under Fourteenth Amendment, but stating prisoners must be afforded only reasonable opportunities to exercise religious freedoms).

In *Turner*, the Supreme Court explained that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. at 89. The Supreme Court articulated four factors to determine if a prison regulation is reasonable: (1) whether there is a valid, rational connection between the regulation and "the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) how accommodating the asserted constitutional right will impact guards and other prisoners; and (4) whether there are ready alternatives to the regulation. *Id.* at 89–91 (quoting *Block v. Rutherford*, 468 U.S. 576, 586 (1984)). The Supreme Court has also advised that when determining whether a prison regulation is reasonable, courts "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). Here, the Court finds only the first and second factors are relevant because, as explained below, CCDC's regular food service accommodates Plaintiff's religious dietary needs. *See O'Lone*, 482 U.S. at 350–52

(analyzing only three of the four elements listed in *Turner*); *Scott v. Miss. Dep't of Corrs.*, 961 F.2d 77, 80–81 (5th Cir. 1992) ("The *Turner* case provides four factors to assist a court's rationality review. Neither *Turner* nor *O'Lone*, however, require a court to weigh evenly, or even consider, each of these factors. The district court did not err in failing to articulate a consideration of each of these factors." (footnote omitted)); *see also Lovelace v. Lee*, 472 F.3d 174, 200 n.9 (4th Cir. 2006) (explaining that remanding the case was more appropriate than affirming on other grounds because "*Turner* at a minimum requires a deferential examination of the prison's rationale for the restrictions," and the prison had not yet presented any substantive rationale for the restrictions).

*Religious Meals*

Reasonableness of CCDC Policy

Defendants produced the "Inmate Religious Program" section of the CCDC Policy and Procedures Manual as evidence that CCDC has a policy to accommodate the religious dietary needs of CCDC prisoners. [Doc. 44-4 at 10–12.] CCDC's policy prevents a prisoner from receiving a religious diet if the prisoner is on a medically required diet—i.e., a diet ordered by medical staff.[5] [*Id.* at 10.] Plaintiff was placed on a medical diet when he was booked into CCDC [Doc. 44-2 at 2]; therefore, Defendants contend that, pursuant to CCDC policy, Plaintiff could not be placed on a religious diet.[6]

---

[5] CCDC's policy with respect to religious diets states, "Special diets for religious reasons will be approved or disapproved through the Chaplain except when medical diets are already in place prior to the inmate's request. Medical diets will take precedence over religious diets." [Doc. 44-4 at 10.]

[6] Plaintiff argues he submitted requests to be placed on a religious diet, but Defendants refused to honor his requests because he was on a medical diet, even though Plaintiff wanted to refuse the "medical treatment" and receive the religious diet instead of the medical diet. [Doc. 61 at 3–4.]

10

To justify the policy to give preference to medical diets, Defendants argue that if they overrode the doctor's decision to provide Plaintiff a medical diet by providing Plaintiff a religious diet, Defendants could have put themselves and other CCDC employees at risk for liability. [Doc. 44 at 4.] Under *Turner*, Defendants have to demonstrate only that (1) the connection between the regulation and the governmental interest is valid and rational and (2) the governmental interest is legitimate. 482 U.S. at 89 (quoting *Block*, 468 U.S. at 586). To meet these requirements, the connection cannot be "so remote as to render the policy arbitrary or irrational," and the governmental interest must be neutral. *Id.* at 89–90. The Court finds Defendants have satisfied these requirements; limiting liability is a valid, rational, and legitimate government interest, and CCDC applies its policy in a neutral manner by applying the policy to all requests for religious meals.

With respect to providing alternative means for Plaintiff to exercise his First Amendment rights, Defendants submitted the affidavit of Ashley E. Cash, the director of support services at CCDC, which states CCDC has served pork-free meals for several years. [Doc. 44-6 ¶ 9.] As a result, Defendants imply CCDC's meals accommodate Plaintiff's alleged religious needs and, therefore, are an alternative to placing Plaintiff on a religious diet. [Doc. 44 at 3.]

Plaintiff contends Defendants incorrectly state CCDC is pork-free because Spam is sold through the CCDC canteen, and Plaintiff was once accidentally given Spam as part of his canteen order. [Doc. 61 at 3.] The Court finds Plaintiff's allegations are consistent with Defendants' evidence that CCDC serves pork-free meals—Defendants did not submit that CCDC is entirely pork-free, only that no pork is served in the detention center's meals. Therefore, the Court finds Defendants have demonstrated that an alternative means of

11

exercising Plaintiff's First Amendment rights is available—Plaintiff does not have to submit a request for a religious diet to receive the pork-free meals Plaintiff requires as part of his religious practices because all meals provided by CCDC are pork-free.

Because Defendants have demonstrated a valid connection between the regulation and a legitimate government interest and the availability of an alternative to exercise First Amendment rights, the Court concludes that the CCDC policy that prevents a prisoner from receiving a religious diet if the prisoner is on a medical diet satisfies the standard articulated in *Turner*, and therefore, the policy is reasonable.[7]

### Defendants' Compliance with CCDC Policy

With respect to Plaintiff's allegations that he was denied a religious diet, Plaintiff has failed to produce any evidence that his constitutional rights were violated; Plaintiff has corroborated Defendants' contentions that Defendants complied with the applicable CCDC policy. When Plaintiff was booked into CCDC, medical staff placed Plaintiff on a carbohydrate-controlled diet because Plaintiff is diabetic; by the terms of the medical order, this diet was to be in place until Plaintiff was released. [Doc. 44-2 at 2.] As explained above, CCDC's policy states medical diets receive precedence over religious diets. [Doc. 44-4 at 10.] The Court finds Defendants complied with the CCDC policy by refusing to place Plaintiff on a religious diet because he was on a medical diet, and because the Court

---

[7] Further, the Court notes that the Constitution compels only that a prisoner be provided a nutritionally balanced meal that will maintain his health. *See LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993) (finding that inmate's complaint regarding the use of Nutraloaf does not rise to the threshold level of a constitutional deprivation); *Abernathy v. Cunningham*, 393 F.2d 775, 778 (4th Cir. 1968) (holding that prison was not required to provide special diet to prisoner obliged by religious belief to abstain from pork where prisoner could obtain balanced diet by voluntarily avoiding such foods). Here, Plaintiff has come forward with no evidence that the meals provided to him were insufficient or that Plaintiff suffered any health problems because he was served pork; therefore, even if the CCDC policy was unreasonable, Plaintiff has failed to establish that Defendants violated his constitutional rights.

has found the CCDC policy is reasonable, Plaintiff cannot establish a violation of his constitutional rights. Therefore, summary judgment should be granted in Defendants' favor as to this claim.

### *Qur'an and Prayer Rug*[8]

With respect to Plaintiff's allegations that he was denied a prayer rug and a Qur'an, Plaintiff has provided no evidence whatsoever to support the general and conclusory claim that Defendants violated his constitutional rights. *See House v. New Castle Cnty.*, 824 F. Supp. 477, 485 (D. Del. 1993) (holding that a plaintiff's conclusory allegations are insufficient to maintain a claim, especially when the plaintiff fails to counter contradictory evidence in the record). On the other hand, Defendants provided the affidavit of Smith, who averred she has no record of Plaintiff requesting a copy of the Qur'an from her or requesting a prayer rug through any available means. [Doc. 44-5 ¶¶ 5, 9.] Smith also averred that no one from Plaintiff's family ever attempted to bring Plaintiff a prayer rug, and Plaintiff did not request Smith to help him order a Qur'an from a publisher. [*Id.* ¶¶ 6, 7.] Accordingly, the Court finds there is no genuine issue of material fact as to whether Defendants complied with CCDC policies with respect to the religious materials Plaintiff alleges Defendants denied Plaintiff, and summary judgment should be granted in Defendants' favor as to these claims.

---

[8] As explained above, Plaintiff's claims regarding the denial of a Qur'an and a prayer rug do not present challenges to CCDC policies; therefore, the Court does not analyze whether these policies are reasonable but analyzes only whether Defendants complied with the policies.

***Fourteenth Amendment Claim***

Plaintiff alleges his Fourteenth Amendment right to equal protection of the laws was violated because Plaintiff was not recognized as a member of the Muslim faith even though other prisoners were recognized. Plaintiff also alleges other Muslim prisoners received religious meals, but Defendants refused to provide Plaintiff with a religious diet.

The Equal Protection Clause of the Fourteenth Amendment prohibits states from denying any person equal protection of the laws. U.S. Const. amend. XIV, § 1. In the Fourth Circuit, a prisoner must demonstrate two elements to establish an equal protection claim:

> To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny.

*Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). As the Supreme Court has determined that prison regulations are valid if they are reasonably related to legitimate penological interests, the treatment of the prisoner is evaluated under the rational basis test rather than strict scrutiny even if the treatment implicates the prisoner's fundamental rights. *Id.* at 654–55 (quoting *Turner*, 482 U.S. at 89).

As explained above, Plaintiff's claims regarding Defendants' refusal to provide him with a religious diet must fail because Defendants acted pursuant to a reasonable prison regulation. As to Plaintiff's claim that he was denied equal protection because he was not recognized as a member of the Muslim faith, Plaintiff has failed to demonstrate that he was treated differently than other similarly situated inmates or that any unequal treatment was

the result of intentional or purposeful discrimination. Defendants contend that any non-recognition of Plaintiff's religious beliefs on their part was not the result of any constitutional violation. Defendants allege there is no evidence that Plaintiff was not recognized as a member of the Muslim faith. [Doc. 44 at 4–5.] Defendants further allege there is no evidence Plaintiff followed the proper procedures—outlined in the CCDC policies regarding prisoners' religious practices [Doc. 44-4 at 13]—to be recognized as a member of the Muslim faith [Doc. 44 at 4]. Plaintiff has failed to produce any evidence beyond his allegations that Defendants refused to recognize him as a member of the Muslim faith; therefore, Plaintiff has failed to create a genuine issue of material fact as to whether Defendants violated his Fourteenth Amendment rights, and as to this claim, summary judgment in favor of Defendants is proper.

**Claims of Failure to Intervene or Respond to Requests or Grievances**

Plaintiff alleges Cannon failed to intervene or respond to Plaintiff's requests and grievances. [*Id.* at 4.] The Court finds that even if Plaintiff's allegations are true,[9] Cannon's actions would not constitute a constitutional violation and cannot be remedied through a § 1983 action. There is no constitutional right to a grievance procedure. *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137–38 (1977). Even if the prison provides for a grievance procedure, violations of those procedures do not amount to a civil rights cause of action. *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1944); *see also Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (holding prison official's failure to comply with state's

---

[9] Defendants did not address this claim in their motion for summary judgment, but because the Court finds Plaintiff can allege no set of facts to support a constitutional violation based on this claim, the Court addresses Plaintiff's claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

15

grievance procedure is not actionable under § 1983). Therefore, Plaintiff does not have a § 1983 cause of action based on his allegations that Cannon refused to intervene or respond to Plaintiff's request and grievance forms.

## **RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that Defendants' motion for summary judgment be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin<br>
United States Magistrate Judge

July 21, 2011
Greenville, South Carolina